Kinkade, J.
 

 The Western Ohio Gravel Company and B. T. Van Camp, doing business as the Van Camp Stone Company, selling agent for the corporation, own and operate a sand and gravel quarry near Germantown, Ohio, on the line of the Cincinnati Northern Railroad, about 42 miles north of Cincinnati. The capacity of this quarry is ■about 200,000 tons per year. Cincinnati consumes about 1,500,000 tons of sand and gravel per annum, and is the natural and nearest market for the output of this quarry.
 

 . There is another sand and gravel quarry located on the line of the Norfolk & Western Railway, at Gravel Pit, Ohio, and about 13 miles from Cincinnati, and still another sand and gravel quarry located on the Pennsylvania Railroad at Miami-ville, Ohio, about 18 miles from. Cincinnati. The two- quarries last mentioned market their output at Cincinnati.
 

 ' ‘For some years prior to 1925, the three quarries mentioned had a common freight rate of 50 cents per ton per car from the three railroads, respectively, from their quarries, respectively, to Cincinnati, and the operators of these three quarries were competitive bidders for the Cincinnati sand and gravel supply. This common freight rate was satisfactory to all the three competitors and to the. .three railroad companies. • The deliveries to
 
 *399
 
 Cincinnati from Germantown were made on the tracks of the Big Four, at Cincinnati. Deliveries for Cincinnati from Gravel Pit were made on the tracks of the Norfolk & Western, in Cincinnati, and deliveries for Cincinnati from Miamiville were made on the tracks of the Pennsylvania Railroad, in Cincinnati.
 

 In the year 1925 the Norfolk & Western Railroad Company and the Pennsylvania Railroad Company, entirely of their own motion, and without consulting with either of the plaintiffs in error in reference thereto, reduced the freight rate from the quarries at Gravel Pit and Miamiville, respectively, on sand and gravel to be used by the city of Cincinnati, from 50 cents per ton per car to 30 cents per ton per car, and the 30-cent freight rate on sand and gravel from these two quarries to and for Cincinnati has been maintained since its adoption, and is the freight rate in force now.
 

 The reduction in the freight rate stated gave to the operators of the quarries at Gravel Pit and Miamiville, respectively, an advantage over the operators of the Germantown quarry of 20 cents per ton in the competitive bidding for the Cincinnati sand and gravel supply. The plaintiffs in error still maintain the 50-cent freight rate from Germantown to Cincinnati. There is no other market near to Germantown where the operators of that quarry can dispose of their output and thereby escape the diminution in their sales and profits arising by reason of this difference in freight applicable, as stated, to the Cincinnati market.
 

 To meet the situation described, the operators
 
 *400
 
 of the Germantown quarry filed a complaint with the Public Utilities Commission, claiming that the freight rate of 50 cents per ton was excessive and unreasonable and asking that the plaintiffs in error be required to reduce the freight rate to 30 cents per ton from Germantown to Cincinnati, in order to meet the reduction made by the Norfolk & Western and the Pennsylvania Railroad and put the Germantown quarry operators in position to again compete with the operators of the Gravel Pit and Miamiville quarries in bidding for the Cincinnati supply of sand and gravel.
 

 Á hearing was had upon evidence, which resulted in the commission finding that the 50-cent freight rate from Germantown was excessive to the extent of 20 cents per ton, and the commission entered an order requiring the plaintiffs in error to put in force a freight rate from Germantown to Cincinnati to meet the rates established by the Norfolk & Western and the Pennsylvania Railroad Company from Gravel Pit and Miamiville, respectively, to Cincinnati. Application for a rehearing was denied. The Cincinnati Northern and Big Four prosecute error here and bring here for the consideration of this court a full transcript of all the evidence, findings, and orders made by the Public Utilities Commission.
 

 Several errors are assigned as calling for a reversal of the order of the commission. We have read the record with care and considered all the errors claimed. It would serve no useful purpose to discuss the evidence in detail or to review the several errors separately.
 

 The matters in dispute are largely questions of
 
 *401
 
 fact, and, in substance, the case presents an attempt to place a quarry 42 miles from market on an equal footing with two other quarries, one 13 miles and the other 18 miles from the same market, and to do this without doing any injustice to any one. The mere statement of such a proposition furnishes its own answer, and the answer is that it cannot be accomplished. The reason why agricultural land located near a large market, which will take and consume the products of the soil, is more valuable than is land of equal quality, but located farther away from the market, is because it is easier, quicker, and less expensive to deliver the product of the land located closer to the market. The same thing is true with mineral products. The cost and expense of transportation is a very important item, and distance is an important element as a matter of course, though not the only element to be considered. The owner of a coal mine or sand and gravel quarry located very near to a large consuming market has a natural and very .valuable advantage over an owner of like property located much farther away from the same market. The owner close to the market cannot justly be compelled to pay a freight rate sufficiently high to put his mine or quarry on the same basis for competitive bidding in the market as the owner whose property is farther away. If transportation companies establish a lesser rate for the shorter haul, that is the good fortune of the closer located owner, and the good fortune as well of the consumers of the output of the property. Neither the Public Utilities Commission nor the courts
 
 *402
 
 can place all property on a common basis, regardless of location, and accomplish substantial justice in doing so. The fact, not in dispute, that all three railroads and all operators of the three quarries mentioned maintained the common freight rate of 50 cents per ton from all these quarries for several years, without complaint from any one as to the reasonableness of the rate, is very strong evidence that that rate ought not now to be reduced to 30 cents per ton against the transportation company having much the longest haul — 42 miles as against the shorter hauls of 13 miles and 18 miles, respectively. It is quite natural and in full accord with integrity and business sagacity for the quarry owners and the transportation companies having the shorter hauls to adopt a lesser freight rate, and thereby take the advantage in securing the business in competitive bidding for the supply the market calls for.
 

 Our conclusion is that the findings and orders of the commission in this case are not sustained by sufficient evidence, and are manifestly against the weight of the evidence. It follows that the findings and orders of the commission must be reversed and this cause remanded to the commission, with instructions to reinstate the 50-cent per ton car rate from Germantown to Cincinnati.
 

 Order reversed.
 

 Marshall, C. J., Day, Allen, Robinson and Matthias, JJ., concur.
 

 Jones, J., concurs in the judgment.